**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SAMUEL MAZZOLA,

      Petitioner,

-vs-                                      Case No.  8:12-CV-1328-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner initiated this action by filing a petition for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Doc. No. 1).   Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. No. 7). Petitioner subsequently filed an amended petition (Doc. No. 10) and a memorandum of law in support of the amended petition (Doc. No. 11).   Thereafter, Respondent filed a response to the amended petition (Doc. No. 17).   Petitioner filed a reply to the response (Doc. No. 23) and a supplement to the reply (Doc. No. 24).

      Petitioner alleges fifteen claims for relief in the amended petition:

1.     Petitioner's constitutional rights were violated when the trial court denied Petitioner's motion for mistrial on the ground that the prosecutor commented that Petitioner failed to call a witness;

2.     Petitioner's sentence as a prison releasee reoffender is unconstitutional because it violates Petitioner's right to a trial by jury;

3.     Petitioner's sentence violates Petitioner's constitutional rights because it exceeds the statutory maximum;

4.     Petitioner's sentence violates Petitioner's constitutional rights because it fails to

provide a numerical term of years, as required by Florida statute;

5-14.    Trial counsel was ineffective:

a. in allowing Petitioner to appear at trial in his prison uniform;

b. in failing to conduct a proper investigation that would have revealed a basis to suppress State witness Rahsheita Stephens' identification of Petitioner during trial;

c. in failing to file a motion in limine to exclude Stephens' identification testimony;

d. in failing to object when the State used a mug-shot of Petitioner to refresh Stephens' recollection when she was unable to identify Petitioner during trial;

e. in failing to 1) effectively cross-examine Stephens regarding her identification of Petitioner, and 2) have Petitioner display the tattoos to the jury;

f. in failing to call Officers Staples, Tully, and Haley to present testimony that would have impeached Stephens' identification testimony;

g. in failing to call Officer Coeyman to present testimony that witnesses Stephens and Porter told him, while at the emergency room looking at Petitioner, that Petitioner did not appear to be the driver of the vehicle that struck and killed the victim;

h. in failing to consult with and hire an expert in the field of psychology to testify that Stephens' identification testimony was unreliable;

i. in failing to investigate the hiring of an expert to testify that Petitioner gave a false confession, and by eliciting damaging testimony from Detective Gibson that in his experience, "no one has admitted to a crime like this that wasn't involved in it, or didn't do it";

j. in failing to object to prosecutorial misconduct during closing arguments; and

15.    Appellate counsel was ineffective in failing to challenge, on direct appeal, the trial court's jury instruction on manslaughter by act.

2

# I. PROCEDURAL HISTORY

The State charged Petitioner by Information with one count of first-degree murder (Ex. 1).[1] A jury found Petitioner guilty of the lesser included offense of second-degree murder (Ex. 3). Petitioner was sentenced as a prison-releasee reoffender to life imprisonment (Ex. 4). Petitioner filed a direct appeal with the Florida Second District Court of Appeal, which affirmed *per curiam* without a written opinion  (Ex. 6).

Petitioner next filed a Motion to Correct Illegal Sentence pursuant to Florida Rules of Criminal Procedure, Rule 3.800(a) (Ex. 7). The state post-conviction court denied the motion (Ex. 8), and the appellate court affirmed without a written opinion (Ex. 9).

Petitioner next filed a Petition Alleging Ineffective Assistance of Appellate Counsel in the Second District Court of Appeal (Ex. 11), which was denied without written explanation (Ex. 12). Petitioner then filed a motion for post-conviction relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 alleging ten claims of ineffective assistance of trial counsel (Ex. 13). The state post-conviction court issued an order summarily denying three claims, and directing the State to respond to the remaining seven claims (Ex. 14). Following the State's response (Ex. 15), the state post-conviction court denied the remaining seven claims (Ex. 16). Petitioner appealed the denial of his Rule 3.850 motion, and the state appellate court affirmed the denial *per curiam* without a written opinion  (Ex. 17).

# II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C.

---

[1]References to the record will be made by citing to the particular volume and page of the Respondent's appendix. For example, "Ex. 1 at p. 1" refers to page one of the volume labeled Exhibit 1.

§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Finally, "[c]laims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal[.]" *Heath*, 941 F.2d at 1132.

## III. ANALYSIS

### Ground One

Petitioner claims that the state trial court deprived him of a fair trial and due process when

it denied his motion for a mistrial based on an improper prosecutorial comment on Petitioner's failure to call a witness.  This claim involves the following exchange between the prosecutor and Petitioner during cross-examination after Petitioner had testified (on direct examination) that he lied to police during the recorded interview because he thought he was protecting his son, who he thought may have been in the car that killed the victim (see Ex. 2 at p. 247):

> PROSECUTOR: Where is your son?
>
> PETITIONER: I'm not sure. I really don't know. I know he's fled Florida.
>
> PROSECUTOR: Is he in jail, in prison in Ohio?
>
> PETITIONER: I have no clue. I haven't been in contact with him since then.
>
> PROSECUTOR: You could have brought him down here to testify for you.
>
> PETITIONER: Pardon me.
>
> PROSECUTOR: You could have brough [sic] him down here to be here today.

(Ex. 2 at p. 248).

Trial counsel objected and moved for a mistrial on the ground that the prosecutor's question/comment that Petitioner could have brought his son to testify improperly shifted the burden of proof to the defense (Ex. 2 at p. 249).  The trial court sustained the objection, denied the motion for a mistrial, and gave the following curative instruction:

> Ladies and gentlemen, you are instructed to disregard the last question asked by the assistant state attorney. The question was improper. In every criminal case it is the state's burden to proof [sic] their case beyond a reasonable doubt and to overcome the defendant's presumption of innocence.
>
> Again, it is the State's burden to prove the crime was committed that the Defendant is charged with, and the Defendant is the person who committed the crime. The Defendant is not required to present evidence or prove anything. You are specifically instructed to keep that foremost in your mind as we go forward.

(Ex. 2 at pp. 249-51).

In state court, Petitioner raised this claim on direct appeal (Ex. 5).  The appellate court summarily affirmed without explanation (Ex. 6).[3]

A prosecutor "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).  However, a burden-shifting comment warrants reversal only where the argument "permeates the entire atmosphere of the trial[.]" *Id*. at 1086 (internal quotation marks omitted).  Moreover, the prejudice from a burden-shifting comment "can be cured by a court's instruction regarding the burden of proof." *Id*. at 1087 (citations omitted).  "[A] prejudicial remark may be rendered harmless by curative instructions to the jury." *Id*. (citation and internal quotation marks omitted).

In Petitioner's case, the prosecutor's question/comment that Petitioner could have brought his son to testify was likely improper.[4]  Indeed, the trial court sustained defense counsel's objection to the question/comment and immediately gave a curative instruction to the jury (Ex. 2 at p. 250-51).  Additionally, the trial court subsequently instructed the jury that the State had the burden of proving the crime beyond a reasonable doubt, and that Petitioner was not required to present evidence or prove anything (Ex. 2 at p. 391).  "[A] jury is presumed to follow jury instructions." *Adams v.*

---

[3]Even though the Second District Court of Appeal's decision is not explained in a written opinion, the decision is entitled to deference under the AEDPA because it does not rest on a procedural ground and therefore is an adjudication on the merits. *See Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1255-56 (11th Cir. 2002) ("In § 2254(d) Congress meant to, and did, mandate deference to state court adjudications on the merits of federal constitutional issues, and a decision that does not rest on procedural grounds alone is an adjudication on the merits regardless of the form in which it is expressed."); *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1255 (11th Cir. 2013) ("It is by now abundantly clear that AEDPA deference applies to summary dispositions of a state court, because '§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.''") (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)).

[4]As stated above, the state trial court instructed the jury that "the question was improper."

*Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983), *cert. denied*, 464 U.S. 1063 (1984).

There is no indication that the jury did not follow the trial court's instruction to disregard the prosecutor's burden-shifting question, and instructions that Petitioner was not required to present evidence or prove anything. Additionally, the prosecutor's question/comment was isolated and did not permeate the atmosphere of the trial. Therefore, the prosecutor's burden-shifting question/comment did not so infect the trial with unfairness as to make Petitioner's conviction a denial of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (on habeas corpus review, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Accordingly, Petitioner has failed to demonstrate that the state appellate court's rejection of this claim was contrary to or an unreasonable application of controlling Supreme Court law or was based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to relief on Ground One.

**Ground Two**

Petitioner contends that his sentence under the Prison Release Reoffender Act (PRRA) is unconstitutional because the trial court, rather than the jury, made the factual determinations as to whether Petitioner qualified under the statute.[5] In support of his contention, Petitioner argues that

---

[5]The PRRA provides:

1. "Prison releasee reoffender" means any defendant who commits, or attempts to commit:

    a. Treason;

    b. Murder;

    c. Manslaughter;

d. Sexual battery;

e. Carjacking;

f. Home-invasion robbery;

g. Robbery;

h. Arson;

i. Kidnapping;

j. Aggravated assault with a deadly weapon;

k. Aggravated battery;

l. Aggravated stalking;

m. Aircraft piracy;

n. Unlawful throwing, placing, or discharging of a destructive device or bomb;

o. Any felony that involves the use or threat of physical force or violence against an individual;

p. Armed burglary;

q. Burglary of a dwelling or burglary of an occupied structure; or

r. Any felony violation of s. 790.07, s. 800.04, s. 827.03, s. 827.071, or s. 847.0135(5);

within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

2. "Prison releasee reoffender" also means any defendant who commits or attempts to commit any offense listed in sub-subparagraphs (a)1.a.-r. while the defendant was serving a prison sentence or on escape status from a state correctional facility operated by the Department of Corrections or a private vendor or while the defendant was on escape status from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

3. If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:

a. For a felony punishable by life, by a term of imprisonment for life;

the PRRA is unconstitutional because it violates his right to trial by jury, and cites to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*, 530 U.S. at 490.

Petitioner's *Apprendi* claim is without merit as he fails to demonstrate that his sentence exceeded the statutory maximum. Petitioner was convicted of second-degree murder, a first-degree felony. Section 782.04(2), Florida Statutes. The statutory maximum penalty for that offense is life imprisonment. Sections 782.04(2); 775.082(3)(d), Florida Statutes. Therefore, Petitioner's sentence to life imprisonment does not exceed the prescribed statutory maximum.

Moreover, the state trial court's imposition of a life sentence under the PRRA did not violate *Apprendi* and Petitioner's right to trial by jury because the fact that Petitioner committed the offense of second-degree murder within three years after being released from the Department of Corrections "is analogous to the fact of a prior conviction because it demonstrates Petitioner's recidivism." *Ross v. McNeil*, 2010 U.S. Dist. LEXIS 53139, at *128 (N.D. Fla. Apr. 14, 2010) (unpublished). *See also Stabile v. State*, 790 So. 2d 1235, 1238 (Fla. 5th DCA 2001) ("*Apprendi* is inapplicable to the Prison Releasee Reoffender Act, because the Act merely limits the court's discretion in sentencing. It does not increase the penalty beyond the statutory maximum."); *Gurley v. State*, 906 So. 2d 1264, 1265 (Fla. 4th DCA 2005) ("For the purpose of applying *Apprendi* and *Blakely* [*v. Washington*, 542 U.S.

---

b. For a felony of the first degree, by a term of imprisonment of 30 years;

c. For a felony of the second degree, by a term of imprisonment of 15 years; and

d. For a felony of the third degree, by a term of imprisonment of 5 years.

Fla. Stat., § 775.082(9)(a). Petitioner appears to contend that his sentence under the PRRA is unconstitutional because the court, rather than the jury, determined that the murder for which he was convicted was committed within 3 years after being released from the Department of Corrections (Dkt. 11 at p. 2).

296 (2004)], the date of a defendant's release from prison under the prison releasee reoffender statute is analogous to the fact of a prior conviction under the habitual felony offender statute.").

The state courts' denial of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.[6]  Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that his sentence to life imprisonment is unconstitutional because it exceeds the statutory maximum for the offense of conviction.   As noted above, in Florida the statutory maximum penalty for second-degree murder is life imprisonment. Sections 782.04(2); 775.082(3)(d), Florida Statutes; *Yasin v. State*, 896 So. 2d 875, 876 (Fla. 5th DCA 2005) ("The statutory maximum sentence for second degree murder is life. . . .").   Therefore, Petitioner's sentence does not exceed the statutory maximum.

Moreover, in denying this claim, the state post-conviction court determined that Petitioner's sentence was "not illegal" under Florida law because "[a] life sentence is expressly permitted for second degree murder."   (Ex. 8 at p. 2).   The state court's determination with regard to the interpretation of a state sentencing statute is an issue of state law that is not subject to federal habeas review. *See Curry v. Culliver*, 141 F. App'x 832, 834 (11th Cir. 2005) (claims regarding the interpretation of a state's sentencing statute are purely questions of state law) (citing *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983)).  *See also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is  a fundamental principle that state courts are the final

---

[6]In state court, Petitioner raised this claim in Ground One of his Rule 3.800(a) motion (Ex. 7).  The state post-conviction court denied the claim (Ex. 8), and the state appellate court affirmed (Ex. 9).

arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (citation and internal quotation marks omitted).

The state courts' denial of this claim was not contrary to clearly established federal law, and was not based on an unreasonable determination of the facts. Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Petitioner asserts that his sentence to "life" imprisonment violates his federal constitutional rights because state law requires his sentence to be set for a term of years. Despite Petitioner's assertion that his life sentence violates his federal constitutional rights, his claim is a state law issue challenging the application of Florida's sentencing laws. The claim, therefore, is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989) ("[F]ederal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.").

Additionally, even if the claim was cognizable on federal habeas review, the state courts determined that a sentence to life in prison is not "an illegal indefinite sentence." (Ex. 11 at p. 2). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Petitioner has failed to demonstrate that his sentence to "life" imprisonment rather than a term of years violates clearly established federal law. He therefore has failed to show that the state courts' denial of this claim was contrary to clearly established federal law. Accordingly, Ground Four does not warrant federal habeas relief.

**Ground Five**

Petitioner complains that trial counsel was ineffective in forcing Petitioner to wear his prison

13

uniform during trial.  Petitioner contends that he told counsel that he did not want to wear the prison

uniform during trial, and that Petitioner's sister brought clothes to the jail for Petitioner to wear at

trial.  Petitioner asserts that because he wore the prison uniform during trial, the jury did not believe

he was a credible witness.

In state court, Petitioner raised this claim in Ground One of his Rule 3.850 motion (Ex. 13

at pp. 3-5).  In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to object
> to the Defendant having to wear his jail uniform at trial. The Defendant asserts that
> he informed his counsel that he did not want to wear the jail uniform, but on the day
> of trial he was told that he did not have permission to change his clothes. He asserts
> that his counsel should have objected to the Defendant not being able to wear his
> own clothes for trial. The Defendant maintains that he was prejudiced because the
> jury was able to identify him as a prisoner and the State was able to argue that the
> Defendant had been in jail for over two years.
>
> In its response, the State asserts that during the motion to suppress hearing
> the day before trial, defense counsel stated that he and the Defendant were
> contemplating remaining in the jail clothes. See Exhibit B: Suppression Hearing
> Transcript, pg. 68-70. Eventually, defense counsel stated that he wanted the
> Defendant to remain in the clothes he was wearing. Therefore, it was clearly a
> strategic decision of counsel to wear jail clothes as it would garner sympathy with
> the jury because of the Defendant's medical condition. The State further argues that
> the Defendant could have voiced his disagreement with defense counsel's decision
> before trial and he failed to do so. See Exhibit B: pgs. 72-74. This Court finds the
> State's arguments persuasive. During the motion to suppress hearing, defense
> counsel asked for the Defendant to be dressed as he was, in his jail clothes, because
> he did not want the Defendant to be uncomfortable trying to cover up an injury.
> Therefore, defense counsel was not ineffective and the Defendant cannot show how
> he was prejudiced. Consequently, this claim is denied.

(Ex. 16 at record pp. 244-45).

Here, the state post-conviction court found that counsel made a strategic decision to have

Petitioner wear his jail clothes during trial because 1) it could elicit jury sympathy due to

Petitioner's medical condition,[7] and 2) he did not want Petitioner to be uncomfortable during the trial by attempting to cover-up his injury. The state court's factual determination that defense counsel made a strategic decision to have Petitioner wear his jail clothes was not unreasonable. *See Fotopoulos v. Sec'y, Dep't of Corr.,* 516 F.3d 1229, 1233 (11th Cir. 2008) (noting that the federal court gives a presumption of correctness to the state court's factual determination regarding whether counsel's actions were the product of a strategic decision), *cert. denied*, 129 S. Ct. 217 (2008).

During the hearing on Petitioner's motion to suppress, the prosecutor expressed his concern that Petitioner wearing a brace and sitting in a wheelchair would elicit sympathy from the jury, and asked the court to direct the Petitioner to "cover up the brace with his jacket or something." (Ex. 16 - "Exhibit B" at transcript p. 68). In response, defense counsel objected, arguing that he and Petitioner "were debating whether we even should try to get clothes and just leave him in the [jail clothes]" and that he "didn't want to do anything that would make [Petitioner] more uncomfortable. . . ." (*Id.* at transcript pp. 68-69). After the judge stated that he was not going to require Petitioner to cover the brace, he asked defense counsel whether he intended to have Petitioner "dressed out" for the trial (*Id.* at transcript p. 69). Defense counsel answered "No, Judge" and "I would like him to be [dressed] the way he is now." (*Id.*). Counsel then clarified that he did not want Petitioner dressed in an orange jail uniform that had "'jail' splattered over it," but wanted Petitioner wearing the blue jail uniform he was wearing at the time of the hearing on the motion to suppress (*Id.* at transcript pp. 69-70). And when the bailiff confirmed that "what [Petitioner's] wearing now would be "what he'll wear tomorrow [at trial,]" defense counsel stated "[t]hat answered my question." (*Id.*

---

[7] Defense counsel argued, during Petitioner's second motion for mistrial, that the jail clothes "could. . .be interpreted as a hospital gown as opposed to a prison gown" because the clothes were "dark blue" and did not have "'County Jail' written on it." (Ex. 2 at p. 254).

at transcript p. 70).  Defense counsel's statements regarding Petitioner wearing his jail clothes during trial support the state post-conviction court's finding that defense counsel made a strategic decision to have Petitioner wear his jail clothes during trial.

Having determined that the state post-conviction court's factual determination was reasonable, this Court next must determine whether counsel's strategic determination was reasonable.  *See  Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (*Strickland* test requires habeas court to determine whether counsel's strategic decision was "reasonable").  "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."  *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (citations and internal quotation marks omitted).   Thus, "strategic choices [by counsel] are virtually unchallengeable." *Id.*

Petitioner has failed to show that trial counsel's decision to allow Petitioner to wear his jail clothes during trial was a course no competent counsel would have taken under the circumstances. It is apparent from the record that counsel had contemplated, and discussed with Petitioner, the issue of whether Petitioner should wear his jail uniform or civilian clothes, and thereafter made a strategic decision to have Petitioner wear his jail uniform in hopes of eliciting sympathy from the jury and to make Petitioner more comfortable during trial.  This Court cannot say that defense counsel's tactical decision to allow Petitioner to wear jail clothes during trial was unreasonable trial strategy. *See, e.g., Estelle v. Williams*, 425 U.S. 501, 508 (1976) ("[I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.") (citations omitted).

Petitioner has failed to show that the state courts' denial of this claim was contrary to

*Strickland* or based on an unreasonable determination of the facts.  Accordingly, Ground Five does not warrant federal habeas relief.[8]

**Ground Six**

During trial, State witness Rahsheita Stephens identified Petitioner as the man she saw driving the car that struck and killed the victim (Ex. 2 at p. 44).  She testified, however, that after the incident she was taken to the hospital where Petitioner was transported, and she could not identify Petitioner at that time because "[t]here were just so many people around him. . . ."  (Ex. 2 at p. 45). Petitioner claims that the day after Stephens was unable to identify Petitioner at the hospital, Detective Gibson asked Stephens to identify Petitioner from a single photograph of Petitioner.  Petitioner  contends that trial counsel was ineffective in failing to investigate and discover that Stephens' in-court identification of Petitioner was the result of this unduly suggestive pre-trial identification procedure.  Petitioner further contends  that counsel would have discovered the suggestive identification procedure had counsel asked Stephens, during her pre-trial deposition, whether she had been asked to identify Petitioner at any other time other than at the hospital. Petitioner argues that "[s]uch questioning is basis [sic] and elementary line of inquiry which would have been pursued by any reasonable attorney." (Dkt. 10 at p. 15).  Petitioner further argues that had counsel discovered the unduly suggestive identification procedure, Stephens' in-court identification

---

[8]The Court notes that Petitioner does not allege a substantive claim that he was denied a fair trial because he was compelled to appear at trial in his jail clothes.  Nor did Petitioner present the claim in state court.  However, even if Petitioner had made the claim, it would fail on the merits.  "[T]he state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Boswell v. Alabama*, 537 F.2d 100, 102 (5th Cir. 1976).  Nevertheless, "a defendant cannot obtain release where he has not objected [to wearing jail clothes] at the time of trial." *Wright v. Texas*, 533 F.2d 185, 188 (5th Cir. 1976).  It is apparent from the record that Petitioner knew he was not required to wear his jail clothes during trial, yet at no point did Petitioner make known to the trial court that he objected to his appearance in jail clothes.  Therefore, Petitioner has not demonstrated that he was forced to wear his jail clothes during trial. *See Estelle*, 425 U.S. at 512 n.9 ("[Defendant's] silence [on the issue of wearing jail clothes during trial] precludes any suggestion of compulsion.").

of Petitioner would have been excluded, and the jury would have found him not guilty.

In state court, Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Ex. 13 at pp. 5-6). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to investigate his case because he would have discovered a basis to move to suppress identification by witness Rahsheita Stephens. The Defendant alleges that at trial Ms. Stephens was the only witness who identified him as the person who drove into the victim. He asserts that after a failed attempt to identify the Defendant at the hospital, Ms. Stephens was shown a photograph of the Defendant by Detective Gibson in a suggestive identification procedure. However, the Defendant asserts that during depositions Ms. Stephens stated that she was not able to identify the driver of the car. The Defendant maintains that his counsel should have questioned the change in testimony and that Ms. Stephens' testimony should have been suppressed.
>
> In its response, the State asserts that the Defendant's claim must be denied because he has not shown that defense counsel was ineffective. The State argues that the Defendant has not shown how he was aware that Ms. Stephens was shown this photo or that counsel knew of this photo. Counsel cannot be ineffective for failing to raise a claim that he knew nothing about. *See Young v. State*, 789 So. 2d 1 160, 1 162 (Fla. 5th DCA 2001). The State argues that during depositions Ms. Stephens' statement that she was unable to identify the driver of the vehicle referred to her ability at the time of the depositions. During trial, defense counsel impeached Ms. Stephens with her deposition testimony which was proper. See Exhibit C: Trial Transcripts, pgs. 47-49, 354-364. This Court finds the State's arguments persuasive as defense counsel impeached the testimony of Ms. Stephens with her inconsistent statements at trial. Therefore, defense counsel was not ineffective and this claim is denied.

(Ex. 16 at record pp. 245-46).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient performance was not objectively unreasonable, and was not based on an unreasonable determination of the facts. Petitioner offered no evidence in support of his allegation that Detective Gibson showed Stephens a photograph of Petitioner. Moreover, even if Detective Gibson had shown Stephens the photograph, Petitioner did not allege, let alone demonstrate, that counsel knew that Detective Gibson had done so. And Petitioner's contention that counsel would have discovered that

Detective Gibson had shown Stephens the photograph had counsel asked Stephens (during her deposition) whether she had been asked to identify Petitioner at any time other than at the hospital is purely speculative. Petitioner has not provided any testimony or an affidavit from Stephens indicating how Stephens would have answered the question.   Counsel therefore cannot be constitutionally ineffective for failing to pursue an issue he knew nothing about.  *See United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009) ("Clairvoyance is not a required attribute of effective representation.").

Moreover, even assuming as true that Detective Gibson showed Stephens a photograph of Petitioner, and assuming counsel was deficient in failing to discover this, Petitioner's claim fails on the prejudice prong of *Strickland*.  Even if Stephens' identification testimony had been excluded as a result of a successful motion to suppress by defense counsel, Petitioner cannot show a reasonable probability that suppression of Stephens' identification of Petitioner would have changed the outcome of the trial.  This is so because defense counsel impeached Stephens at trial with her prior deposition testimony that she could not identify the driver of the vehicle (*see* Ex. 2 at p. 49), and because the recorded statement Petitioner gave to police, in which he admitted he was the driver and gave very specific details of the incident, was sufficient evidence that Petitioner was the driver.

Therefore, Petitioner has failed to demonstrate that the state courts' denial of this claim was contrary to *Strickland* or based on an unreasonable determination of the facts.  Accordingly, Ground Six does not warrant federal habeas relief.

**Ground Seven**

Petitioner contends that trial counsel was ineffective in failing to file a motion in limine to exclude Stephens' testimony concerning her identification of Petitioner as the assailant.  Petitioner

argues that counsel should have filed the motion in limine and argued that Stephens was not "qualified" to give identification testimony because prior to trial, Stephens was unable to identify Petitioner as the assailant.

In state court, Petitioner raised this claim as Ground Three of his Rule 3.850 motion (Ex. 13 at pp. 7-9). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to file a motion in limine to exclude the testimony of Ms. Stephens. The Defendant maintains that prior to trial Ms. Stephens could not identify the Defendant and only gave general descriptions. The Defendant asserts that his counsel knew before trial that Ms. Stephens could not identify the Defendant and counsel should have moved to have her excluded from testifying at trial. He asserts that if his counsel had raised this issue in a motion it would have been excluded and the State would not have been able to prove its case and he would have been found not guilty.
>
> In its response, the State argues that the Defendant's reliance on *Swafford v. State*, 533 So. 2d 270 (Fla. 1988) and *Purvear v. State*, 810 So. 2d 901 (Fla. 2002), are misplaced as they both consider a hearsay exception concerning an out of court identification. The State asserts that the proper remedy for defense counsel was to impeach the inconsistent statements of Ms. Stephens and not to file a motion in limine as the Defendant suggests. The State asserts that there was no legal basis upon which defense counsel could have based an objection or motion to exclude the identification testimony simply because it was inconsistent. This Court finds the State's arguments persuasive. During trial, defense counsel impeached the witness with her deposition testimony where she stated that she did not see the suspect. See Exhibit C: Trial Transcripts, pgs. 47-49. Therefore, defense counsel did impeach the witness and was not ineffective. Consequently, this claim is denied.

(Ex. 16 at record p. 246).

Petitioner has failed to demonstrate either deficient performance or prejudice because he has failed to show that a motion in limine would have been granted, and Stephens' identification testimony would have been excluded, had counsel filed the motion. The state post-conviction court determined that there was no legal basis to exclude Stephens' identification testimony. Therefore, the state post-conviction court has answered the question of what would have happened had defense

counsel filed a motion in limine requesting the trial court exclude Stephens' identification testimony - - the motion would have been denied. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Petitioner has not established that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Ground Seven does not warrant federal habeas relief.

**Ground Eight**

Petitioner contends that trial counsel was ineffective in failing to object when the State, during its examination of Stephens, showed Stephens a mug shot of Petitioner to refresh Stephens' recollection after she was unable to identify Petitioner at trial. Petitioner further contends that counsel was ineffective in failing to object to Stephens' in-court identification of Petitioner because it was made only after she was shown the photograph. Petitioner argues that had counsel objected, the jury would have found the State was unable to prove Petitioner was the driver of the car that killed the victim.

In state court, Petitioner raised this claim as Ground Four of his Rule 3.850 motion (Ex. 13 at pp. 9-12). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to object to the State using a mug shot of the Defendant to show to Ms. Stephens. The Defendant alleges that Ms. Stephens stated in depositions that she did not see the Defendant at the scene of the crime. He alleges that Ms. Stephens was shown a single photograph of the Defendant to refresh her memory and then she was able to identify the Defendant at trial. The Defendant maintains that his counsel should have

objected to the State's use of a mug shot to bolster Ms. Stephens testimony at trial. The Defendant maintains that if his counsel had objected the jury would have found that the State was unable to prove identity.

In its response, the State asserts that Ms. Stephens was able to identify the Defendant prior to being shown the photograph. See Exhibit C: Trial Transcripts, pgs. 44-45, 58-59. Therefore, the photo was not necessary to refresh Ms. Stephens' recollection and she was only shown the photo to explain why she could not identify the Defendant at the hospital.

This Court finds the State's arguments persuasive. Ms. Stephens identified the Defendant before she was shown the photograph and therefore, defense counsel had no reason to object. Consequently, defense counsel was not ineffective and this claim is denied.

(Ex. 16 at record pp. 246-47).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient performance was not objectively unreasonable, and was not based on an unreasonable determination of the facts. The record supports the state court's factual finding that Stephens identified Petitioner during trial before she was shown Petitioner's photograph (Ex. 2 at pp. 44, 58). Therefore, because Stephens identified Petitioner before she was shown the photograph, counsel was not deficient in failing to object to Stephens' identification of Petitioner on the ground that the identification was made only after Stephens was shown Petitioner's photograph. Moreover, counsel was not deficient in failing to object to the State showing Petitioner's photograph to Stephens on the ground that it was improper to do so to refresh Stephens' recollection that Petitioner was the driver. The photograph was not used to refresh Stephens' recollection as to what the driver looked like. Rather, Stephens was shown the photograph during re-direct in an apparent attempt to rehabilitate her after defense counsel impeached her with her deposition testimony (Ex. 2 at pp. 58). Accordingly, Ground Eight does not warrant federal habeas relief.

**Ground Nine**

22

Petitioner contends that counsel was ineffective in failing to 1) effectively cross-examine Stephens regarding her identification of Petitioner, and 2) have Petitioner display the tattoos on his arms, shoulders, and back to the jury. Petitioner argues that because Stephens testified 1) at trial that the driver of the vehicle was not wearing a shirt, and 2) during her deposition that the driver "did not have any 'particularly identifying features like tattoos,'" counsel should have asked Stephens, during cross-examination at trial, whether she saw any tattoos on the driver, then had Petitioner display his tattoos to the jury.

In state court, Petitioner raised this claim as Ground Five of his Rule 3.850 motion (Ex. 13 at pp. 13-14). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to effectively cross-examine Ms. Stephens about her identification of the Defendant. The Defendant asserts that he has numerous tattoos on his body and that during her depositions Ms. Stephens stated that the driver did not have identifying features, like tattoos, on his body. The Defendant maintains that his counsel should have questioned Ms. Stephens at trial about her prior statement that the Defendant did not have tattoos. He also asserts that he should have been asked to display his tattoos for the jury. The Defendant maintains that if his attorney had not been ineffective it is reasonable that the outcome of his trial would have been different.

> However, the Defendant's allegations lack merit. Defense counsel questioned the Defendant regarding the amount and location of the tattoos on his body. See Exhibit B: Trial Transcript, pgs. 246-247. The Defendant has not provided any testimony that the jury did not believe his testimony that he had visible tattoos. Moreover, defense counsel did ask witness, Ms. Porter, if she noticed tattoos on the Defendant's body to which she replied no. See Exhibit B: Trial Transcript, pgs. 70. Therefore, it was established to the jury that the Defendant had tattoos that the eyewitnesses did not notice. Consequently, defense counsel is not ineffective for failing to continue to question the witnesses or for failing to have the Defendant display the tattoos for the jury. Therefore, this claim is denied.

(Ex. 14 at p. 3).

The state post-conviction court's determination that Petitioner failed to demonstrate deficient performance was not objectively unreasonable, and was not based on an unreasonable determination

23

of the facts.  Initially, Petitioner has not established how Stephens would have testified had she been asked at trial whether she saw tattoos on the driver.  Although Petitioner contends that during Stephens' pre-trial deposition she testified that the driver did not have any "particular identifying feature's [sic] like tattoos" (Dkt. 1 at p. 21), Petitioner has failed to provide this Court with Stephens' deposition testimony.  Therefore, Petitioner has failed to present any evidence to support his contention that Stephens would have testified at trial as he theorizes.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).  Consequently, his claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).  *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Moreover, even if Stephens had testified at trial that she did not see any tattoos on the driver, and even if Petitioner had removed his shirt to reveal the tattoos on his shoulders and back to the jury, Petitioner has failed to show a reasonable probability of a different outcome at trial, let alone that the Florida courts' denial of this claim was unreasonable.  During cross-examination of Ms. Porter at trial, defense counsel asked Ms. Porter whether the driver of the car that killed the victim was wearing a shirt as he was running away (Ex. 2 at p. 71).  Ms. Porter answered "No, he did not

have a shirt on." (*Id*.).  Defense counsel also asked Ms. Porter if she saw "any tattoos on the

driver?" (*Id*. at p. 70).  Ms. Porter answered "No." (*Id*.). During direct examination, Petitioner

testified that on the date of the incident he had several tattoos on his arms, shoulders, and back (*Id*.

at 246-47).  Additionally, it is apparent from the trial transcript that the tattoos on Petitioner's arms

were, at least partially, visible to the jury (*Id*. at p. 246).  During his closing statement, defense

counsel argued that Petitioner could not have been the driver because Petitioner had numerous

tattoos on his back and on both arms and shoulders, yet Ms. Porter testified 1) that she saw  the

driver of the car that struck the victim, 2) that the driver was not wearing a shirt, and 3) that she did

not see any tattoos on the driver (*Id*. at pp. 367-68).  The jury was therefore aware that Petitioner had

multiple tattoos on his arms, shoulders, and back, that the eyewitnesses testified that the driver of

the car was not wearing a shirt,[9] and that Ms. Porter testified that she did not see any tattoos on the

driver.  Therefore, Petitioner removing his shirt to reveal the tattoos on his back and shoulders, and

Stephens' testimony that she did not see tattoos on the driver, merely would have been cumulative

of evidence already presented at trial.  "[A] petitioner cannot satisfy the prejudice prong of the

*Strickland* test with evidence that is merely cumulative of evidence already presented at trial." *Rose

v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011).  Accordingly, Ground Nine does not warrant

federal habeas relief.

**Ground Ten**

Petitioner contends that trial counsel was ineffective in failing to call Officers Staples, Tully,

and Haley to testify at trial.  Petitioner asserts that Officer Staples would have testified 1) that when

she arrived at the location where Petitioner was found shot, Petitioner was wearing "blue jean

---

[9]Stephens testified, in pertinent part, that "I know exactly what [the driver] had on, which is the same thing the guy had on at the hospital, which is white jeans and no T-shirt." (Ex. 2 at p. 49).

shorts," and "had on a dark blue T-shirt with a pocket," and 2) she saw paramedics take off

Petitioner's shorts and shirt.  Petitioner avers that Officer Tully would have testified that after

Petitioner was transported to the hospital, she "observed a dark colored shirt laying in the same area

where the Petitioner was found."  And Petitioner asserts that Officer Haley would have testified that

Petitioner "was wearing a blue shirt."  Petitioner argues that the officers' testimony would have cast

doubt on Stephens' identification of Petitioner as the driver of the vehicle that struck the victim

because Stephens testified that the driver was not wearing a shirt.

In state court, Petitioner raised this claim as Ground Six of his Rule 3.850 motion (Ex. 13

at pp. 15-16). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to present available witnesses at trial. The Defendant alleges that his counsel should have called Officers Janie Staples, Thomas Tully, and James Haley who were available to testify at trial. The Defendant asserts that these officers would have testified that the Defendant was wearing a blue shirt, which was taken off when the paramedics arrived. The Defendant maintains that the testimony of these three witnesses would have impeached the testimony of Ms. Stephens that the Defendant was not wearing a shirt when she observed him at the time of the offense. The Defendant alleges that the impeachment of Ms. Stephens would have bolstered the credibility of his testimony.
>
> In its response, the State asserts that defense counsel made a strategic decision not to call any witnesses at trial because he wanted to go first and last in closing arguments. See  Exhibit C: Trial Transcripts, pgs. 362-363. The State asserts that by presenting the testimony of these nominal witnesses, counsel would have given up the benefit of closing arguments. The State also maintains that the Defendant was caught five blocks from the scene of the accident and it is possible that he obtained a shirt while running. This Court finds that the Defendant's claim lacks merit. The Defendant has not shown how impeaching Ms. Stephens on whether or not the Defendant was wearing a shirt would have changed the outcome of the trial and is merely speculating that it would have changed the jury verdict. See Bass v. State, 932 So. 2d 1 170, 1 172 (Fla. 2d DCA 2006). Therefore, this claim is denied.

(Ex. 16 at record p. 247).  The state post-conviction court's denial of this claim was not objectively

unreasonable, and was not based on an unreasonable determination of the facts.  Initially, Petitioner

has not established how the officers would have testified at trial with regard to this issue.  Although

Petitioner contends that the officers would have testified that Petitioner was wearing a blue shirt

when they saw him, Petitioner has failed to provide this Court with any testimony or affidavit from

the officers in support of his contention.  Therefore, Petitioner has failed to present any evidence to

support his contention that the officers would have testified as he theorizes. *See Ashimi*, 932 F.2d

at 650.  Consequently, his claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256

F.3d at 1187.

Moreover, even if the officers would have testified that when they saw Petitioner he was

wearing a blue shirt, Petitioner has failed to show a reasonable probability of a different outcome

at trial, let alone that the Florida courts' denial of this claim was unreasonable.  As the state post-

conviction court stated, Petitioner "was caught five blocks from the scene of the accident and it is

possible that he obtained a shirt while running."  Therefore, even if Petitioner was found wearing

a shirt after he had been shot, that does not establish that Petitioner was not the individual Stephens

saw driving the vehicle and fleeing on foot from the scene of the crime.

Furthermore, the state post-conviction court found that defense counsel made a strategic

decision not to call witnesses other than Petitioner in order to retain first and last closing argument.[10]

This factual determination that counsel made a strategic decision not to call other witnesses was not

unreasonable in light of the record (Ex. 2 at pp. 362-63).  And this Court cannot conclude that

counsel's decision not to call witnesses other than Petitioner to retain first and last closing argument

---

[10]At the time of Petitioner's trial, Fla. R. Crim. P. 3.250 (2005) provided, in pertinent part, that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury."

fell outside the range of strategic decisions that counsel could have reasonably made.  *Stoddard v. Sec'y, Dep't of Corr.*, 600 Fed. Appx. 696, 707 (11th Cir. 2015) (unpublished) ("Because the question of 'whether an attorney's decision is 'strategic' or 'tactical' is a question of fact,' we first review whether the state court's factual determinations were reasonable and then proceed to the legal question of the reasonableness of counsel's strategic decision.") (quoting *Debruce v. Comm'r, Ala. Dep't of Corr.,* 758 F.3d 1263, 1273 (11th Cir. 2014)).  This is especially true where defense counsel used Stephens and Porter's testimony that the driver was not wearing a shirt and did not have tattoos to his advantage by arguing to the jury that Petitioner could not have been the driver because he had numerous tattoos all over his arms, shoulders, and back.  This argument likely would have been weakened, if not rendered useless, had defense counsel called the officers to testify that they later found Petitioner five blocks away, shot and wearing a shirt.

The state courts' denial of this claim was neither contrary to nor an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Accordingly, Ground Ten does not warrant federal habeas relief.

**Ground Eleven**

Petitioner contends that trial counsel was ineffective in failing to call Officer Charles R. Coeyman to testify at trial.  Petitioner asserts that Officer Coeyman would have testified that while he, Stephens, and Porter were at the hospital where Petitioner was taken, Stephens and Porter saw Petitioner and told Officer Coeyman that "they did not believe [Petitioner] has [sic] the driver, because the diver [sic] was a younger person without facial hair."  (Dkt. 10 at p. 26).  Petitioner argues that had counsel called Officer Coeyman to testify, Officer Coeyman's testimony would have cast doubt on Stephens' identification of Petitioner as the driver.

28

In state court, Petitioner raised this claim as Grounds Seven of his Rule 3.850 motion (Ex. 13 at pp. 16-18). In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to present Officer Charles Coeyman as a witness at trial. The Defendant alleges that his counsel should have called Officer Coeyman as a witness at trial because the officer would have testified that when Ms. Stephens was questioned she could not identify the Defendant. However, the Defendant's allegations lack merit. Defense counsel impeached Ms. Stephens with the statements she made to Officer Coeyman as well as with her inconsistent statements made during depositions. See Exhibit B: Trial Transcripts, pgs. 48-49. Therefore, the Defendant cannot show that the information that was told to Officer Coeyman was not bought into trial and he was not prejudiced by not having the officer testify. Consequently, this claim is denied.

(Ex. 14 at p. 4).

The state court's determination that Petitioner was not prejudiced by counsel failing to call Officer Coeyman to testify was not an unreasonable one. Initially, Petitioner has not established how Officer Coeyman would have testified had he been called to testify at trial. Although Petitioner contends that Officer Coeyman would have testified that Stephens and Porter told him at the hospital that Petitioner did not appear to be the driver, Petitioner has failed to provide this Court with any testimony or affidavit from Officer Coeyman. Therefore, Petitioner has failed to present any evidence to support his contention that the officers would have testified as he theorizes. *See Ashimi*, 932 F.2d at 650. Consequently, his claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d at 1187.

Moreover, even if Officer Coeyman would have testified that Stephens and Porter told him that Petitioner did not appear to be the same man who was driving the vehicle, Petitioner has failed to show a reasonable probability of a different outcome at trial, let alone that the Florida courts' denial of this claim was unreasonable. As the state post-conviction court stated, during trial "[d]efense counsel impeached Ms. Stephens with the statements she made to Officer Coeyman as

29

well as with her inconsistent statements made during depositions." (Ex. 14 at p. 4). This factual finding is supported by the record (Ex. 2 at transcript pp. 47-50). Officer Coeyman's testimony therefore merely would have been cumulative to the substantial impeachment of Stephens that already had taken place. Additionally, by presenting Coeyman's testimony counsel would have lost the right to both the first and last closing arguments. Finally, the jury heard a recorded statement Petitioner gave to police during which Petitioner 1) admitted he was the driver of the vehicle that struck and killed the victim, and 2) gave a very detailed account of the incident, including a) how the incident occurred near a field, b) how the car was "swaying" from side to side as it approached the victim, who likewise was moving from side to side, c) how the car crashed into and was stuck in a fence, d) how the victim was under the car, and 5) how the drugs were in a Ziplock bag (*Id*. at transcript pp. 122-32), that was consistent with both the eyewitnesses' description of the events and the physical evidence from the scene of the incident. Although Petitioner testified at trial that he fabricated the story to protect his son, the jury was free to disregard his testimony as not credible. *See United States v. Marley*, 2015 U.S. App. LEXIS 9557, at *3 (11th Cir. June 9, 2015) ("A jury is free to choose among reasonable constructions of the evidence."); *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990) ("credibility determinations are the exclusive province of the jury").

The state courts' denial of this claim was neither contrary to nor an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Accordingly, Ground Eleven does not warrant federal habeas relief.

**Grounds Twelve and Thirteen**

Petitioner contends that trial counsel was ineffective in failing to call an expert witness to

testify 1) that Stephens' identification testimony was unreliable (Ground Twelve), and 2) that Petitioner gave a false confession (Ground Thirteen). Initially, Petitioner does not state who would have testified as an expert, and does not provide any evidence of what testimony an expert would have offered. He has failed to present any actual testimony or affidavits in support of his claims. Therefore, because Petitioner has not presented any actual testimony or affidavit from an expert witness, this Court has no basis for determining 1) whether an expert would have testified that Stephens' identification testimony was unreliable, and Petitioner made a false confession, and 2) whether the expert testimony would have changed the outcome of Petitioner's trial. Petitioner's self-serving speculation regarding what an expert witness may have testified to at trial will not sustain a claim of ineffective assistance of counsel. *See Ashimi*, 932 F.2d at 650.

Moreover, the state post-conviction court's denial of these claims was not objectively unreasonable, and was not based on an unreasonable determination of the facts. In state court, Petitioner raised these claims as Grounds Seven[11] and Eight of his Rule 3.850 motion (Ex. 13 at pp. 18-25). In denying these claims, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for failing to hire an expert to testify regarding the factors that would affect the reliability of eyewitness identification. The Defendant asserts that if his counsel had gotten an expert witness to testify it would have enhanced the jury's knowledge and assisted them in making a correct decision. The Defendant asserts that an expert would have explained to the jury why he gave a false confession to the police to protect his son. He asserts that if the jury had received this information there would have been a not guilty verdict.

> In its response, the State asserts that the Defendant's claim is not sufficient.

---

[11]In his Rule 3.850 motion, Petitioner's claim that counsel was ineffective in failing to call Officer Coeyman to testify, and claim that counsel was ineffective in failing to retain an expert to testify that Stephens' identification testimony was unreliable, were both identified as "Ground Seven" (Ex. 13 at pp. 16, 18). Petitioner's claim that counsel failed to retain an expert to testify regarding the reliability of the identification testimony should have been identified as "Ground Eight" of the Rule 3.850 motion, and Petitioner's claim that counsel failed to retain an expert to testify that Petitioner made a false confession should have been identified as "Ground Nine."

The State argues that the Defendant fails to allege that there was any expert available to offer the proposed testimony or that the expert testimony would have passed the Frye test. See Frye  v. United States, 293 F. 1013 (D.C. Cir. 1923). The State also asserts that the Defendant has not shown that the testimony of the expert witness would have come into trial. This Court finds the State's argument persuasive. The Defendant is merely speculating that an expert's testimony would have changed the jury's reliability on the testimony of the eyewitness. See Bass v. State, 932 So. 2d 1 170, 1172 (Fla. 2d DCA 2006). Therefore, as the Defendant cannot show that the outcome of the proceedings would have changed if counsel had hired an expert witness, this claim is denied.

(Ex. 16 at record p. 248).

The state post-conviction court's order rejected these claims on *Strickland*'s prejudice prong. The state post-conviction court made a factual finding that Petitioner did not present any expert testimony that would have been admissible at trial, and therefore Petitioner was merely speculating that an expert's testimony would have changed the outcome of the trial.  The state post-conviction court's factual finding is presumed correct, *see*  28 U.S.C. § 2254(e), and is supported by the record. Petitioner offered no evidence that an expert would have testified as he believed they would (*see* Ex. 13).  Petitioner has not proved by clear and convincing evidence that the state post-conviction court's factual finding was incorrect. 28 U.S.C. § 2254(e)(1).

Based on the state post-conviction court's findings, it was objectively reasonable for the court to conclude that Petitioner failed to carry his burden of showing a reasonable probability that an expert would have testified as Petitioner stated and that the outcome of the trial would have been different.  *See Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) ("Duran's claim that an expert witness would have prompted the jury to believe his testimony and disregard the statements he made during the police interview is conclusory and speculative, and does not amount to a showing of prejudice.").

Finally, in Ground Thirteen, Petitioner contends that counsel was ineffective in eliciting

damaging testimony from Detective Gibson.  On cross-examination, counsel asked Detective Gibson

"Sir, in your experience, either personally or in other investigations, have you experienced people

that make false confessions?" (Ex. 2 at p. 137).  After the prosecutor's objection to the question was

overruled, Detective Gibson answered "I can honestly say that no one has admitted to a crime like

this that wasn't involved in it or didn't do it."  (*Id.* at p. 138).  Petitioner argues that Detective

Gibson's answer "slamm[ed] the door shut on Petitioner's defense," namely, that Petitioner believed

that his son was the driver of the vehicle that killed the victim, and therefore gave a false confession

to protect his son.

In state court, Petitioner raised this claim in Ground Eight of his Rule 3.850 motion (Ex. 13

at pp. 22-25).  In denying the claim, the state post-conviction court stated:

> The Defendant alleges that his counsel was ineffective for eliciting damaging
> testimony during the cross-examination of Detective Gibson. The Defendant asserts
> that his counsel attempted to establish through cross-exam a defense of false
> confession and thereby got damaging testimony. He maintains that no reasonable
> attorney would ask whether people make false confessions to establish the validity
> of a defense. The Defendant asserts that without the testimony of an expert and
> counsel's improper questioning the jury was led to improperly believe that false
> confessions do not exist.
>
> However, the Defendant's understanding of the questioning of Detective
> Gibson is misplaced. Defense counsel asked the Detective if in his experience he had
> ever met someone who gave a false confession. Detective Gibson's answer was
> merely from his experience and the Defendant has applied it too broadly. See Trial
> Transcript, pgs. 138-139. Furthermore, the Defendant cannot show that he was truly
> prejudiced by defense counsel asking such a question. The Defendant is merely
> speculating that this question turned the jury against him or prejudiced his case.
> Therefore, this claim is denied.

(Ex. 14 at p. 4).

The state post-conviction court's determination that Petitioner failed to demonstrate

prejudice was not objectively unreasonable, and was not based on an unreasonable determination

of the facts. Defense counsel did not ask Detective Gibson whether individuals sometimes make false confessions.  Rather, defense counsel asked Detective Gibson whether Detective Gibson himself had seen someone make a false confession, to which Detective Gibson answered that he had not.  Therefore, Detective Gibson's answer was limited to Detective Gibson's own experience with false confessions.  Accordingly, the answer did not "slam[] the door shut on" Petitioner's defense that he made a false confession.

Additionally, in light of the totality of the evidence of Petitioner's guilt,[12] the state post-conviction court's conclusion that there was no reasonable probability that the outcome of Petitioner's trial would have been different had counsel not asked Detective Gibson whether he had ever experienced a situation where someone gave a false confession is not unreasonable.

The state courts' denial of these claims was neither contrary to nor an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Accordingly, Grounds Twelve and Thirteen do not warrant federal habeas relief.

**Ground Fourteen**

Petitioner contends that trial counsel was ineffective in failing to object to prosecutorial misconduct during closing argument.  Specifically, Petitioner asserts that counsel should have objected to the following statements made by the prosecutor on the ground that the statements either improperly vouched for the credibility of Stephens and the police officers, or improperly shifted the burden of proof to Petitioner:

---

[12]That evidence included 1) Stephens and Porters' eyewitness testimony, 2) Petitioner's statement in which he admitted that he was the driver of the vehicle that killed the victim, and gave small details regarding the incident that were consistent with the eyewitness testimony and physical evidence, 3) the fact that Petitioner gave inconsistent statements to the police regarding why he had been shot, 4) the fact that the vehicle that killed the victim belonged to Petitioner's son and girlfriend, 5) the fact that Petitioner admitted driving that vehicle on prior occasions, and 6) the fact that Petitioner was found shot merely five blocks from where the victim was struck and killed.

And these officers. all three of them can't be wrong. All three can't be lying. They took down notes saying that he said he was in the white car.

But she [Stephens] identified his booking photo when he got booked into the jail shortly after all this happened. And she identified him in court. That's the man. That's the man who did all of this and drove over him. . . .Now, why would Ms. Stephens lie about this being the defendant? I understand Terry Baker [the victim] is a friend of hers. He dated her aunt. But she doesn't know the defendant, has never seen him before. She wants to make sure the right person is convicted of the crime. There is no reason to say its him if it is not.

Defendant never explains what he's doing in an alley on September 4th near dusk miles from his house. . . .He never explained it. He never told you what he was doing there. Why? Because it's not true.

Another problem. He never explains how he got there. . . .How did he get there miles from his house in the middle of a neighborhood that he doesn't live in?

He never explains why he got shot. I mean, if somebody else did this why shoot him? He didn't do it. He doesn't explain that. Why? Because the story never happened. He said his son ran up to him, they talked and his son ran off. Why did he stay? He never explained that.

(Ex. 2 at pp. 327-28, 337-39).

In state court, Petitioner raised this claim in Ground Nine of his Rule 3.850 motion (Ex. 13 at pp. 26-28). In denying the claim, the state post-conviction court determined that the prosecutor's comments were not improper because they did not bolster the testimony of the witnesses and did not shift the burden of proof to Petitioner. Specifically, the state post-conviction court stated:

The Defendant alleges that his counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments. The Defendant alleges that the prosecutor improperly bolstered a State witness by vouching for the veracity of the law enforcement testimony. He also alleges that the prosecutor improperly shifted the burden of proof to the Defendant. The Defendant asserts that his due process rights were violated.

In its response, the State asserts that defense counsel made general statements attacking the credibility of witnesses and as such the prosecutor's statements were just in response. See Exhibit C: Trial Transcripts, pgs. 31 1-317. The trial court even instructed the jury to consider the witnesses' motivation to testify truthfully when

considering credibility. See Exhibit B: pgs. 392-393. The State asserts that in regards to the police officers the prosecutor was merely pointing out the consistency of their statements and counsel had no reason to object to these statements. See Johnson v. State, 801 So. 2d 141, 142 (Fla. 4th DCA 2001). The State further asserts that the arguments made by the prosecutor about Stephens and Porters [sic] lack of motivation to lie were proper and allowed. See Johnson v. State, 858 So. 2d 1274, 1276 (Fla. 3d DCA 2003).

In regards to the burden of proof, the State asserts that the prosecutor asked rhetorical questions which were intended to demonstrate inconsistencies and flaws in the Defendant's testimony. See Exhibit C: Trial Transcripts, pgs. 337-338. The State argues that the Defendant has not demonstrated that there were any comments by the prosecutor that impermissibly shifted the burden of proof. Further, the jury was continually reminded that the State had the burden of proof by defense counsel, by the prosecutor, and by the trial court. See Exhibit C: Trial Transcripts, pgs. 240, 314-318, 337-338, 375-376, 390-391 . This Court finds the States [sic] arguments persuasive. The prosecutor did not bolster the testimony of various witnesses and defense counsel had no reason to object about the burden of proof since it was not shifted. Consequently, this claim is denied.

(Ex. 16 at record pp. 248-49).

"To warrant reversal of a verdict[,] prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993) (citing *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987)). "Specifically, a prosecutor's remark during closing argument must be both improper and prejudicial to a substantial right of the defendant." *Id.* (citing *United States v. Bascaro*, 742 F.2d 1335, 1353 (11th Cir. 1984)). "[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)).

Review of the prosecutor's statements support the state court's denial of these claims. Petitioner's assertion that the prosecutor improperly vouched for the credibility of the witnesses'

testimony is based upon a misapprehension of that concept. Attempts to bolster a witness by vouching for her credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983)).  However, "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). When a prosecutor voices a personal opinion but indicates that this belief is based on evidence in the record, the comment is not improper. *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in an effort to support testimony of two Government witnesses, only pointed to matters in evidence).

This Court finds no instances of improper bolstering in the prosecutor's closing argument. None of the comments identified by Petitioner were an explicit personal endorsement of a witness' credibility, nor did any of the comments include a reference to evidence not before the jury. Referring only to evidence presented at trial, the prosecutor argued that 1) Stephens' identification of Petitioner was credible because she had no reason to fabricate that Petitioner was the individual she saw driving the vehicle that killed the victim (Ex. 2 at p. 328), and 2) Petitioner's testimony that he did not tell the officers on September 4, 2003, that he was driving a white Chevy Beretta (Ex. 2 at pp. 266-67) was not credible because Officers Haley, Skinner, and Kovacsev each testified that Petitioner had told them on September 4, 2003, that he was driving a Chevy Beretta (Ex. 2 at pp. 336-38).

The prosecutor's comments were not an explicit personal endorsement of the officers' or

Stephens' credibility and did not include references to evidence not before the jury. Accordingly, Petitioner has failed to show that the prosecutor's comments were improper bolstering of the witnesses.

Petitioner likewise has failed to show that the prosecutor's comments shifted the burden of proof. The prosecutor's statements regarding Petitioner's failure to explain 1) why he was in the alley where he was shot, 2) how he got to the alley, 3) why he was shot in the alley, and 4) why he stayed in the alley after his son allegedly ran away from the alley, were not improper statements because the prosecutor was making a fair comment on Petitioner's failure to produce evidence that would support his testimony and defense to the charges. *United States v. Sosa*, 208 F. App'x 752, 756-57 (11th Cir. 2006) (pointing out the defendant's failure to produce evidence to corroborate his story, without suggesting that he was required to do so, did not shift the burden of proof); *Cook v. Schriro*, 538 F.3d 1000, 1020 (9th Cir. 2008) ("Prosecutors may comment on the failure of the defense to produce evidence to support an affirmative defense so long as it does not directly comment on the defendant's failure to testify.").

In this case the prosecutor did not state that Petitioner had the burden to prove his innocence. In fact, the prosecutor told the jury that the State had the burden to prove Petitioner's guilt (Ex. 2 at p. 318). Furthermore, the prosecutor only commented on the lack of evidence that corroborated Petitioner's story that he fabricated his statement to police to protect his son. *See Sosa*, 208 F. App'x at 757 (noting the prosecutor's comment on the lack of evidence to corroborate the defendant's story was not improper). Additionally, any potential prejudice was dismissed by the trial court's clear instructions to the jury regarding the criminal offense charged and the burden of proof. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (a prejudicial remark can be rendered

harmless by curative instructions to the jury).  The trial court instructed the jury that the State had the burden of proof, and Petitioner was not required to present evidence or prove anything (Ex. 2 at p. 391). It is generally presumed that jurors follow their instructions. *See Ruiz v. Sec'y, Dep't of Corr.*, 439 F. App'x 831, 834 (11th Cir. 2011); *Puiatti v. McNeil*, 626 F.3d 1283, 1314-15 (11th Cir. 2010). Thus, there is no indication that the prosecutor's comments impermissibly shifted the burden of proof to the defense.

In sum, the prosecutor's comments in the instant case did not improperly bolster the credibility of the witnesses, did not shift the burden of proof to the defense, and did not render the trial fundamentally unfair.  Therefore, Petitioner has failed to demonstrate that the state courts' denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, Ground Fourteen does not warrant federal habeas relief.

**Ground Fifteen**

Petitioner contends that appellate counsel was ineffective in failing to assert on direct appeal that the trial court erred by giving a fundamentally erroneous jury instruction on the lesser offense of manslaughter by act.  Petitioner asserts that the instruction erroneously included the element of intent to kill.[13]

In state court, Petitioner asserted this claim in his petition for writ of habeas corpus asserting ineffective assistance of appellate counsel (Ex. 11).  The Florida Second District Court of Appeal denied the petition without a written explanation (Ex. 12).

Petitioner has not shown that the Florida Second District Court of Appeal's decision was

---

[13]The instruction stated, in pertinent part, "[b]efore you can find the defendant guilty of manslaughter, the State must prove the following two elements beyond a reasonable doubt. . .1. Terry James Baker is dead. . .2. [Petitioner] intentionally caused the death of Terry James Baker or. . .the death of Terry James Baker was caused by the culpable negligence of Samuel Anthony Mazzola." (Ex. 2 at p. 385).

contrary to or an unreasonable application of *Strickland*, or based on an unreasonable determination of the facts.[14]  The manslaughter by act jury instruction used at Petitioner's 2006 trial tracked the 2006 version of the Florida standard jury instruction on manslaughter by act.  *See* Fla. Std. Jury Instr. (Crim.) 7.7 (2006). At the time Petitioner's direct appeal concluded on August 8, 2007 (see Ex. 6), no Florida appellate court had held that the manslaughter by act standard instruction was erroneous.  It was not until February 2009 that a Florida appellate court held that the use of the 2006 version of the standard manslaughter instruction constituted fundamental error because it imposed an additional element of intent to kill.  *See Montgomery v. State*, 70 So. 3d 603, 604 (Fla. 1st DCA 2009).

Eleventh Circuit precedent rejects the argument "that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).  Therefore, because prior to 2009 no Florida appellate court had held that the use of the 2006 version of the standard jury instruction on manslaughter by act constituted fundamental error, appellate counsel did not provide deficient performance by failing to raise the manslaughter instruction claim during Petitioner's direct appeal in 2007.  *See Ardley*, 273 F. 3d. at 993 (noting that "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," and that precedent applies even when the "issue was, in hindsight, a sure fire winner"); *Pimental v. Florida Dep't of Corr.*, 560 F. App'x 942 (11th Cir. 2014) (unpublished) (concluding that appellate counsel did not render ineffective assistance in failing to predict that use of 2008 Florida manslaughter instruction was fundamental error).  Accordingly, Ground Fifteen does not warrant

---

[14]Although the decision is not explained in a written opinion, the decision is an adjudication on the merits and therefore entitled to deference under the AEDPA.  *Wright*, 278 F.3d at 1255-56; *Bishop*, 726 F.3d at 1255.

federal habeas relief.

Any of Petitioner's claims not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 10) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability. This Court should grant a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   Petitioner has failed to make a substantial showing of the denial of a constitutional right.[15] Accordingly, a certificate of appealability is **DENIED** in this case.  And because Petitioner is not entitled to a certificate of appealability, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on September 30, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any

---

[15]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  See Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts.